FILED
September 21, 2011
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0003783332

5
HAGOP T. BEDOYAN, CSB NO. 131285
JACOB L. EATON, CSB NO. 244834
KLEIN, DENATALE, GOLDNER,
  COOPER, ROSENLIEB & KIMBALL, LLP
5260 N. Palm Avenue, Suite 201
Fresno, California 93704
Telephone: (559) 438-4374
Facsimile: (559) 432-1847

Proposed Attorneys for Debtor-in-Possession

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF CALIFORNIA
# FRESNO DIVISION

| | |
|---|---|
| In re:<br><br>THE WARNER COMPANY, INC.,<br><br>Debtor-in-Possession. | Case No. 11-60461-B-11<br><br>Chapter 11<br><br>DC No. KDG-1<br><br>Emergency Hearing Date: September 22, 2011<br>Emergency Hearing Time: 1:30 p.m.<br>Final Hearing Date: To be set<br>Final Hearing Time: To be set<br>Place: United States Bankruptcy Court<br>2500 Tulare Street, Fifth Floor<br>Department B, Courtroom 12<br>Fresno, California<br>Judge: Honorable W. Richard Lee |

**DECLARATION OF DONALD WOLFE IN SUPPORT OF MOTION TO USE CASH COLLATERAL AND GRANT ADEQUATE PROTECTION**

I, DONALD WOLFE, declare:

1. I am the president, secretary and treasurer of The Warner Company, Inc., Debtor in Possession in the above captioned proceeding ("Debtor").

2. Debtor commenced this Chapter 11 case by filing its Voluntary Petition under Chapter 11 of the Code on September 20, 2011. There is no Chapter 11 Trustee in this case and, therefore, the Debtor is also the Debtor-in-Possession.

3. Debtor is in the business of retail sales of fine jewelry. Warner Jewelry Company was established in 1867. Casey Stephenson, whose probate estate owns 100% of Debtor's stock, began his jewelry career as a teenager and owned and operated two

independent jewelry stores by 1977 at the age of 22. Mr. Stephenson purchased the Warner Jewelry Company and incorporated Debtor, which took over the business of the Warner Jewelry Company, in 1993 – the same year it relocated to Fig Garden Village in Fresno, California. Debtor's sales grew to more than $10 million in 2006. Mr. Stephenson relocated Debtor's store to a "superstore" located at Palm and Herndon avenues in Fresno, California in 2007 just as the economy began to slow down before the 2008 recession. In 2008, Mr. Stephenson passed away due to cancer, at which time, the stock in the Debtor became property of Mr. Stephenson's probate estate.

4. I served as Chief Financial Officer of Debtor for several years before becoming the president of Debtor after the death of Mr. Stephenson. Also, I was appointed trustee of Mr. Stephenson's estate by the Fresno County Superior Court, but I will be resigning from that position. I have managed to keep Debtor's business afloat despite the recession and the financial drains caused by the move to the superstore. Debtor moved back to a smaller location in Fig Garden Village location in November 2010 in order to reduce operating costs. Customers have responded positively to the move back to Fig Garden Village, and sales volume is good given the constraints caused by hampered cash flow, limited inventory, and lack of financing. However, creditor demands for payment far exceed Debtor's ability to repay under current conditions.

5. Westamerica Bank is Debtor's primary creditor. Westamerica Bank initiated a lawsuit against Debtor and is seeking to have a receiver appointed over Debtor's business. Debtor filed this Chapter 11 case to retain control over its business and conduct an orderly liquidation of its assets in order to maximize payments to its creditors.

6. Debtor employs approximately 19 people, including me as its president. I will be the Debtor's representative in this case.

7. Debtor has negotiated a Consignment and Promotion Agreement ("the Consignment Agreement") with Marsden Brothers Promotions, Inc. ("MBP") with that will allow Debtor to liquidate its assets with jewelry that will be consigned through MBP. The consigned jewelry will fill in the "gaps" in Debtors inventory and will be carefully selected so

as not to compete directly with Debtor's inventory. Debtor has filed a motion to assume executory contract that seeks authority to assume the Consignment Agreement concurrently herewith. Debtor will require the use of cash collateral to continue the operation of its business through the liquidation process and the consignment sale.

8. "Cash Collateral" consists of (a) cash on hand; (b) money on deposit (c) accounts receivable; and (d) proceeds of sale of Debtor's inventory that is not on consignment.

9. Based upon a search of the records on file with the California Secretary of State's office, Debtor believes that the following entities have UCC financing statements or liens on file that have not expired, been paid, or been terminated:

    a. Westamerica Bank (which was assigned from County Bank);
    b. Lazare Kaplan International, Inc.;
    c. Sparks Creations, Inc.;
    d. David Yurman Timepieces, LLC and Yurman Design, Inc.;
    e. Simon Golub & Sons, Inc. dba C&A Diamonds;
    f. Kwiat, Inc.;
    g. Shrenuj USA, LLC; and
    h. Mitul Gems, LLC.

Many of the UCC-1 financing statements appear to give notice of consignment rather than assert a security interest.

10. The secured claim held by Westamerica Bank is the first priority claim in the amount of about $2.8 million, while the inventory collateral is valued at about $785,000.00. Therefore, Debtor believes that Westamerica Bank is the only secured creditor.

11. Debtor expects to liquidate its inventory through sales between now and the end of January 2012. Debtor intends to liquidate its inventory through the Consignment Agreement and planned sales events through the 2011 holiday season. Debtor seeks authorization from the Court to use cash collateral in the amount, with a 10% variance, and for the purposes set forth on the Debtor's weekly budget attached as Exhibit "A" to the *Exhibits to Motion to Use Cash Collateral and Grant Adequate Protection* (the "Budget").

12. Debtor requests interim authorization to use cash collateral on a weekly basis as set forth in the Budget to avoid immediate and irreparable harm pending a final hearing on the

Motion. Debtor requests final authorization to use cash collateral through January 7, 2012 as set forth in the Budget.

13. Debtor requests authority to pay critical vendors and employees in order to continue its business uninterrupted. These payments include payments to employees for earned but unpaid wages as of the petition date, insurance premiums, and utilities in the following amounts:

    a. Debtor requests authority to pay priority, earned but unpaid wages and taxes thereon for wages earned from September 12, 2011 through September 19, 2011 and commissions for the period of August 27, 2011 through September 11, 2011 in the amount of $12,244.21;

    b. Debtor requests authority to pay $9,000.00 for jewelry and liability insurance premiums that came due before the filing of the petition, but that must be paid to ensure the continuity of insurance of the Debtor's assets. The premiums will be paid in two increments of $4,500.00. The first payment will be made during the week of September 26, 2011 and the second payment will be made during the week of October 25, 2011; and

    c. Debtor requests authority to pay for utilities and telephone services that came due before the filing of the petition so as to ensure the continuity of utility and telephone service to Debtor.

Debtor requests authority to pay these pre-petition debts in from its cash collateral. The employee wages were earned during the 30 days prior to the filing of Debtor's case, while the insurance and utilities are critical to the success of Debtor's Chapter 11 case. Debtor's business will be irreparably harmed if Debtor loses employees because it is unable to pay priority wages that are owed or loses customers because of a disruption to Debtor's utilities.

14. Debtor will provide adequate protection to its secured creditors by:

    a. Liquidating secured creditors' collateral in the ordinary court of business thereby maximizing the return to all creditors;

b. Making adequate protection payments to Westamerica Bank in the following amounts as indicated in the Budget:

   i. $25,000.00 during the week of November 7, 2011,
   ii. $50,000.00 during the week of November 14, 2011,
   iii. $300,000.00 during the week of November 21, 2011,
   iv. $75,000.00 during the week of November 28, 2011,
   v. $75,000.00 during the week of December 5, 2011,
   vi. $75,000.00 during the week of December 12, 2011,
   vii. $75,000.00 during the week of December 19, 2011, and
   viii. $100,000.00 during the week of December 26, 2011.

These payments will total $775,000.00, while it is estimated that the value of Debtor's inventory collateral is $785,000.00.

15. Debtor is unable to provide secured creditors with a replacement lien as additional adequate protection because all post-petition inventory will be on a consignment basis through its agreement with MBP.

16. The foregoing statements are within my personal knowledge and I can testify competently thereof if called as a witness.

I so declare under penalty of perjury this ___ day of September, 2011.

_____
Donald Wolfe

ORIGINAL