HAGOP T. BEDOYAN, CSB NO. 131285
JACOB L. EATON, CSB NO. 244834
KLEIN, DENATALE, GOLDNER,
  COOPER, ROSENLIEB & KIMBALL, LLP
5260 N. Palm Avenue, Suite 201
Fresno, California 93704
Telephone: (559) 438-4374
Facsimile: (559) 432-1847

Proposed Attorneys for Debtor-in-Possession

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

### FRESNO DIVISION

| | |
|---|---|
| In re:<br><br>THE WARNER COMPANY, INC.,<br><br>Debtor-in-Possession. | Case No. 11-60461-B-11<br><br>Chapter 11<br><br>DC No. KDG-2<br><br>Date: September 22, 2011<br>Time: 1:30 p.m.<br>Place: United States Bankruptcy Court<br>2500 Tulare Street, Fifth Floor<br>Department B, Courtroom 12<br>Fresno, California<br>Judge: Honorable W. Richard Lee |

**DECLARATION OF DONALD WOLFE IN SUPPORT OF MOTION FOR ORDER AUTHORIZING DEBTOR TO ASSUME EXECUTORY CONTRACT AND BORROW MONEY**

I, DONALD WOLFE, declare:

1. I am the president and secretary of The Warner Company, Inc., Debtor in Possession in the above captioned proceeding ("Debtor").

2. Debtor commenced this Chapter 11 case by filing its Voluntary Petition under Chapter 11 of the Code on September 20, 2011. There is no Chapter 11 Trustee in this case and, therefore, Debtor is also the Debtor-in-Possession.

3. Debtor negotiated and entered a Consignment and Promotion Agreement ("the Consignment Agreement") with Marsden Brothers Promotions, Inc. ("MBP") before filing its

allow Debtor to liquidate its existing, acquire additional inventory on a consignment basis and borrow money sufficient to fund the Debtor's liquidation efforts in Chapter 11.

4. Debtor seeks authority to assume the Consignment Agreement and borrow money from MBP for advertising and professional expenses as provided in the agreement.

5. Debtor entered into the Consignment Agreement with MBP that became effective on August 31, 2011. The Consignment Agreement contemplates a two-stage liquidation of the Debtor's assets that will last through January or 2012. Neither party had completed their performance under the Consignment Agreement as of the petition date.

6. The primary terms of the Consignment Agreement are as follows:
   a. MBP and Debtor shall jointly conduct a liquidation sale of the inventory of Debtor.
   b. MBP shall:
      i. Advertise for the sale;
      ii. Provide Debtor with a Sales Director and Assistant Director for the sale;
      iii. Advance up to $100,000.00 for advertising and related costs with no interest;
      iv. Advance $25,000.00 for legal fees with no interest; and
      v. Consign inventory with Debtor and assist in procuring consignment inventory from third parties for the sale;
   c. Debtor shall:
      i. Reimburse MBP for costs expended by MBP associated with the sale with no interest;
      ii. Work with MBP on its duties;
      iii. Provide the sale facility; and
      iv. Return unsold consigned inventory to its owners after the sale;
   d. Consigned inventor shall remain property of the consignor, and shall not become property of the estate or Debtor;

e. MBP shall receive a 10% fee on the sale price of the inventory consigned by MBP or its vendors through mid-November 2012;

f. Starting in mid-November, instead of the 10% fee, MBP shall receive a 12% fee on the sale of all of the merchandise and hard assets in the Debtor's business, consigned or otherwise, except on the sale of consigned, loose diamonds. MBP shall receive 24% of the gross profit for consigned, loose diamond sales;

g. Additionally, Debtor shall pay MBP $1,000.00 per week for MBP employees assisting with the sale on-site.

The forgoing summary is not a complete list of the terms of the Consignment Agreement. The complete terms of the agreement are found in the Consignment Agreement. A copy of the Consignment Agreement is attached as Exhibit "A" to the *Exhibits to Motion for Order Authorizing Debtor to Assume Executory Contract and Borrow Money* ("the *Exhibits*").

7. Debtor now seeks to assume the Consignment Agreement as a part of its Chapter 11 case. Debtor believes that a liquidation of its business through the use of MBP is in the best interest of its creditors. In addition, Debtor believes that liquidating through the planned sales events as outlined in the Consignment Agreement is the best method of maximizing the proceeds and profits for the benefit of creditors. The Debtor estimates that upon the conclusion of the liquidation sale, there will be approximately $1,475,089 available to pay its creditors, including its largest creditor, Westamerica Bank.

8. Debtor is not in default of the Consignment Agreement and has performed all of the obligations required of its terms.

9. Debtor believes that no harm or prejudice will occur to any other party in interest if the *Motion for Order Authorizing Debtor to Assume Executory Contract and Borrow Money* filed by Debtor is granted.

10. Debtor believes it is in its best interest and the best interest of its Chapter 11 estate for Debtor to assume the Consignment Agreement because Debtor believes that it provides the foundation for the liquidation of Debtor's business on the terms that will be most

beneficial to creditors. If the Debtor's case were to be liquidated without the addition of new inventory from MBP, the only creditor that would receive a distribution would be Westamerica. Therefore, the Consignment Agreement should be assumed under Debtor's business judgment.

11. As necessary part of the Consignment Agreement, MBP has advanced fund for the Debtor's attorney's Chapter 11 retainer in the amount of $25,000.00, which occurred prior to the commencement of this case. In addition, MBP has agreed to advance funds for advertising and other necessary preparations for the sales events. Debtor does not have sufficient money to pay the necessary costs for advertising and other preparations, which could cost as much as $100,000.00. The Consignment Agreement provides that MBP will advance up to $100,000.00 for the costs of the sale.

12. Debtor seeks authorization to borrow money from MBP as part of the assumption of the Consignment Agreement through the Motion to meet its advertising and preparation costs. MBP has agreed to provide up to $100,000.00 to Debtor to finance the costs of the sales. The advance will not be subject to interest. However, the advanced money is to be repaid from Debtor's income after the "cost" of consigned items as an administrative expense, but before other expenses. The money will be provided by MBP to Debtor after Debtor has obtained Court approval to borrow the funds. Further details of the advance can be found in the Consignment Agreement attached as Exhibit "A" to the Exhibits.

13. The terms under which Debtor is seeking approval to borrow funds from MBP are reasonable because (a) no interest will be charged, (b) Debtor will be able to make payments to MBP from the proceeds of the sales events, and (c) Debtor will be able to liquidate its business through a large sales event and generate more income than it otherwise would to be able to through the liquidation proceeds described in the Consignment Agreement.

14. There will be prejudice to Debtor and Debtor's creditors if the Motion is denied because Debtor will have insufficient funds to operate, generate a profit, and repay their creditors. Therefore, it is in all parties' best interests to grant the Motion.

14. There will be prejudice to Debtor and Debtor's creditors if the Motion is denied because Debtor will have insufficient funds to operate, generate a profit, and repay their creditors. Therefore, it is in all parties' best interests to grant the Motion.

15. There will be sufficient proceeds from the sales of inventory to repay MBP. Debtor believes that it will generate gross revenues of about $5,800,000.00 if Debtor is able to assume the Consignment Agreement and conduct the sales events provided for therein.

16. Debtor believes that the terms for borrowing the advance are the best terms possible.

17. The foregoing statements are within my personal knowledge and I can testify competently thereof if called as a witness.

I so declare under penalty of perjury this 21 day of September, 2011.

_____
Donald Wolfe

ORIGINAL